JOSEPH J. MAHONEY, JR., ET AL.

v.

NATIONSBANK OF VIRGINIA, N.A.

Record No. 940478

NATIONSBANK OF VIRGINIA, N.A.

v.

JOSEPH J. MAHONEY, JR., ET AL.

Record No. 940484

March 3, 1995

Present: All the Justices

*Thomas P. Mains, Jr. (Mains and Mains*, on brief), for appellants. Record No. 940478.

*James W. Korman (Dannon G. Williams; Bean, Kinney & Korman*, on brief), for appellee. Record No. 940478.

*James W. Korman (Dannon G. Williams; Bean, Kinney & Korman*, on briefs), for appellant. Record No. 940484.

*Thomas P. Mains, Jr. (Mains and Mains*, on brief), for appellees. Record No. 940484.

JUSTICE STEPHENSON delivered the opinion of the Court.

The two issues presented in these consolidated appeals are (1) whether the obligation of good faith prescribed in Code § 8.1-203, a part of the Uniform Commercial Code (the UCC), can be invoked to negate or modify express contractual provisions (Record No. 940478) and (2) whether the trial court erred in refusing to order the payment of attorney's fees (Record No. 940484).

I

NationsBank of Virginia, N.A. (the Bank) filed a motion for judgment against Joseph J. Mahoney, Jr., and Helen M. Mahoney (the Mahoneys), guarantors of a deed of trust note made by Oakton Mews Limited Partnership (Oakton Mews or the Partnership). The Bank, the holder of the note, sought recovery of the outstanding balance due on the note, plus accrued interest, late charges, and attorney's fees. Subsequently, the Mahoneys and the

Partnership paid the outstanding indebtedness in full, plus attorney's fees in the amount of 25% of the balance due.

Prior to paying the note in full, however, the Mahoneys filed a counterclaim against the Bank, seeking recovery of damages in the amount of $500,000. The Mahoneys alleged that the Bank breached its obligation of good faith, as prescribed in Code § 8.1-203.[1] They claimed that the Bank acted in bad faith when it refused to approve proposed sales of certain property and to release the property from the deed of trust so that the proceeds of the sales could be applied to the payment of the note.

After extensive discovery, the Bank filed a motion for summary judgment with respect to the Mahoneys' counterclaim. The Bank also requested that the court require the Mahoneys to pay its attorney's fees incurred in defending the counterclaim.

The trial court granted the Bank's summary judgment motion. In its memorandum opinion, the court concluded that all the alleged actions in bad faith were allowed by express provisions of the contract, and, therefore, the UCC's obligation of good faith could not be invoked to alter those contract provisions. The trial court, however, denied the Bank's request for attorney's fees.

On December 29, 1993, the trial court entered its final judgment effecting its rulings. Both parties appeal.

## II

No material fact is genuinely in dispute with respect to the summary judgment ruling. The Mahoneys were limited partners in Oakton Mews, a partnership formed to purchase three large building lots in Fairfax County. Purchase of the lots was financed by a $450,000 loan from Sovran Bank, N.A. (now NationsBank) and secured by a deed of trust on the lots. Oakton Mews, acting by and through its general partner, Riverview Associates, Inc., was the maker of the deed of trust note, and the Mahoneys personally endorsed and guaranteed payment of the note.

The Mahoneys also executed a separate guaranty agreement whereby they unconditionally guaranteed full and prompt payment of the note. The guaranty agreement provided, *inter alia*, that the Mahoneys agreed that the Bank "may . . . substitute, release, relinquish, subordinate, exchange, renew, extend, modify,

---

[1] Code § 8.1-203 provides that "[e]very contract or duty within [the UCC] imposes an obligation of good faith in its performance or enforcement."

or compromise, in whole or in part, any security or securities" held as collateral for the debt.

In addition, the Mahoneys signed and accepted three commitment letters, issued by the Bank, each of which contained provisions for the release of collateral. Although the amount required for the release of collateral varied with each commitment letter, the amount required for the release of an individual lot from the deed of trust was never less than $150,000.

After Oakton Mews purchased the land and developed the lots, the real estate market declined. As a result, the sale of the lots became more difficult, and Oakton Mews experienced difficulty in keeping the interest payments current.

Thereafter, Oakton Mews presented the Bank with two contracts for the sale of Lot 2 and one contract for the sale of an easement over Lot 3. The Bank, however, refused to release the collateral because the minimum requirement of $150,000 prescribed by the commitment letters was not met by any of the sales contracts. Consequently, none of the transactions occurred. Later, the Bank did agree to release its lien on Lot 1, the sale of which yielded about $162,500.

Oakton Mews failed to keep current its payments on the note, and the Bank, in accordance with the note's terms, demanded payment of the outstanding balance. When such payment was not made, the Bank instituted the action against the Mahoneys.

## III

The Mahoneys concede that the Bank had the legal contractual right to act as it did. They contend, nonetheless, that Code § 8.1-203 imposed an obligation of good faith upon the Bank that required it to exercise its discretion regarding the release of its collateral reasonably and with proper motives, not arbitrarily or in a manner inconsistent with the parties' reasonable expectations. The Mahoneys assert that the sales contracts the Partnership presented to the Bank were "commercially reasonable and should have been accepted." According to the Mahoneys, the Bank's refusal to release the collateral was arbitrary and constituted a breach of the UCC's obligation of good faith. The Bank contends, on the other hand, that its actions were authorized by contract provisions expressly agreed to by the Mahoneys and that the obli-

gation of good faith prescribed in Code § 8.1-203 cannot negate or modify the contract terms.[2]

We have not previously considered this issue. However, courts in other jurisdictions have dealt with the matter. In *Nantahala Village, Incorporated v. NCNB National Bank of Florida*, 976 F.2d 876, 881 (4th Cir. 1992), a guarantor claimed that a bank acted in bad faith because it held the guarantor's stock as excess collateral. The guaranty agreement at issue gave the bank "a lien upon, security title to and a security interest in all property of [the guarantor] now or at any time hereafter in the possession of [the] Bank in any capacity whatsoever." *Id.* at 878. In rejecting the guarantor's bad faith contention, the district court, applying Florida law, concluded that all acts of the bank complained about "flowed from valid and binding loan documents executed by both parties," and, therefore, the bank did not breach the statutory duty of good faith when it "merely exercise[d] its contractual rights." *Id.* at 882. The court of appeals agreed. *Id.* at 881-82.

■ Similar conclusions have been reached by other federal courts of appeals. In *Grand Light & Supply Co. v. Honeywell, Inc.*, 771 F.2d 672, 674 (2nd Cir. 1985), the court considered a claim of bad faith with regard to the termination of a distributorship arrangement between a manufacturer and one of its authorized distributors. The manufacturer had issued a "Distributor Policy" stating that " '[t]ermination may be made by either party with 30 days written notice.' " *Id.* at 675. The court, applying Connecticut law, held that the termination was proper because the UCC's obligation of good faith "may not be used to override explicit contractual terms." *Id.* at 679. In *Triangle Mining Co. v. Stauffer Chemical Company*, 753 F.2d 734, 739 (9th Cir. 1985), the court of appeals considered a mining contract that provided for its termination at will by either party upon 90 days' notice. The court, applying Idaho law, ruled that the contract's termination clause could not be negated by any implied obligation of good faith. *Id.*[3]

---

[2] The Bank also contends that it pursued its rights "at all times" only under the separate guaranty agreement and that such agreements are not governed by the UCC. This appeal, however, also involves other documents that are governed by the UCC; thus, we will assume, without deciding, that the UCC governs.

[3] For other cases with similar holdings, see *Cardinal Stone Company v. Rival Manufacturing Company*, 669 F.2d 395, 396 (6th Cir. 1982) (good faith requirement of UCC § 1-203, as adopted in Ohio, could not be invoked to limit purchaser's unfettered right "to

■ The foregoing decisions from other jurisdictions, with which we agree, appear to be the majority view. Consequently, we affirm the trial court's ruling and hold that, when parties to a contract create valid and binding rights, one party does not breach the UCC's obligation of good faith by exercising such rights.

## IV

Next, we consider the issue regarding attorney's fees. At the outset, it is important to note that the Mahoneys have paid attorney's fees in the amount of 25% of the unpaid balance on the note. The Bank contends, nonetheless, that the trial court erred in refusing to require the Mahoneys to pay additional attorney's fees incurred in defending the counterclaim.

To decide the question, we must examine the pertinent contract provisions. The note provides, in relevant part, that its obligors agreed to pay

all costs and expenses incurred by the Bank in connection with the enforcement of [the] Note . . . or the collection of the indebtedness evidenced [by the Note] . . . or the defense of any claim arising out of, or in any way related to, [the] Note or any deed of trust or security agreement or other instrument securing [the] Note or related to the making of the loan evidenced [by the Note], including, without limitation, attorney's fees of twenty-five percent (25%) of the unpaid balance hereof if [the] Note is placed in the hands of an attorney for collection.

The Mahoneys, as "Endorsers and Payment Guarantors" of the note, unconditionally endorsed and guaranteed payment of the note "including, without limitation[,] . . . all . . . costs and attorneys fees, all in accordance with and subject to the terms and provisions of the Note." In the separate guaranty agreement, the Mahoneys agreed to pay "all expenses incurred in collecting such indebtedness . . . and in enforcing this Guaranty, including twenty-five per cent (25%) attorney's fees, if . . . such indebted-

terminate [the] purchase order in whole or in part at any time"), and *Corenswet, Inc.* v. *Amana Refrigeration, Inc.*, 594 F.2d 129, 138 (5th Cir.), *cert. denied*, 444 U.S. 938 (1979) (section 1-203 good faith requirement, as adopted in Iowa, cannot be used to strike express term of distributorship agreement allowing termination by either party at any time and for any reason on ten days' notice).

ness . . . or this Guaranty, or both, be placed in the hands of an attorney for collection."

Although the Bank consistently has made clear that it sued only on the separate guaranty agreement, it relies upon the note's language that the obligors agreed to pay "all costs and expenses incurred by the Bank in connection with . . . the defense of any claim arising out of, or in any way related to, [the] Note." The Bank asserts that its attorney's fees were "expenses incurred" in connection with the defense of a claim arising out of, or related to, the note.

The Mahoneys, however, contend that, by the terms of the separate guaranty agreement and of the note, attorney's fees are limited to 25% of the unpaid balance of the indebtedness and that they have paid such a fee. Therefore, they assert, nothing further is owing.

The Bank drafted the separate guaranty agreement and the note, and, clearly, under their terms, the Bank was entitled to attorney's fees incurred in the collection of the indebtedness. Both the separate guaranty agreement and the note also clearly provide for the Bank's recovery of expenses incurred in the collection of the indebtedness. The Bank, therefore, distinguished between expenses and attorney's fees with respect to the debt's collection. Arguably, then, "costs and expenses" incurred in the defense of claims does not include attorney's fees.

At most, an ambiguity exists regarding whether the Bank was entitled to attorney's fees incurred in the defense of the Mahoneys' counterclaim. The Bank could have expressly provided for the recovery of attorney's fees incurred in the defense of claims just as it did for the recovery of attorney's fees incurred in the collection of the indebtedness. The Bank, however, did not so provide.

When an ambiguity exists, a court will construe a contract more strictly against the party who prepared it. *Winn* v. *Aleda Const. Co.*, 227 Va. 304, 307, 315 S.E.2d 193, 195 (1984). Applying this principle in the present case, we conclude that the Bank is not entitled to recover additional attorney's fees.

## V

In sum, we hold that the trial court did not err in granting summary judgment in favor of the Bank on the Mahoneys' counter-

claim. We further hold that the trial court did not err in refusing to award the Bank additional attorney's fees.

Accordingly, the trial court's judgment will be affirmed.

Record No. 940478 — *Affirmed.*
Record No. 940484 — *Affirmed.*