**John ANDREWS, et al., Plaintiffs,**

v.

**NATIONSBANK, N.A., Defendant.**

**Civ. A. No. 94–2197 (JR).**

United States District Court,
District of Columbia.

Oct. 13, 1995.

Nicholas H. Hantzes, The Robinson Law Firm, Washington, DC, for plaintiffs.

Brian F. Kenny, Miles & Stockbridge, Fairfax, VA, Jefferson V. Wright, Miles & Stockbridge, Baltimore, MD, for defendant.

## MEMORANDUM

ROBERTSON, District Judge.

Nationsbank is charged in this civil action with breaching its statutory and contractual duties to a guarantor to act in good faith and in a commercially reasonable manner and to provide notice with respect to its disposition of collateral given to secure a loan. Plaintiff is John Andrews, a guarantor of the loan. He has been joined in this action by the trustee of Andrews' estate in bankruptcy.[1] Andrews and the trustee (hereinafter collectively "Andrews") claim that Nationsbank improperly relinquished assets that, if properly disposed of, would have reduced the outstanding balance of the loan or even provided value in excess of the loan amount. Now before the Court is Nationbank's motion for summary judgment. That motion is granted.

## FACTS

The material facts are not disputed: On September 14, 1989, Nationsbank loaned $3.1 million to Airail I, a corporation, in order to finance Airail's purchase of commercial realty in Prince William County, Virginia. The loan was evidenced by a note secured by, *inter alia*, Airail's assignment of its interest in a 15–year lease of the property to Tarmac Virginia, Inc. Andrews was a shareholder of Airail and personally guaranteed the loan.

*The foreclosure sale.* When the note matured on September 13, 1991, Airail failed to pay the outstanding principal and accrued interest. On July 15, 1992, the substitute trustee under the deed of trust gave notice of a foreclosure sale on the property. The notice was sent to Airail's counsel and, in Andrews' case, to the address set forth in the guaranty of payment Andrews had signed. The foreclosure sale was scheduled for August 21, 1992. On August 19, 1992, Airail filed a petition for relief under Chapter 11 of the Bankruptcy Code, automatically staying the foreclosure sale. Nationsbank subsequently moved for relief from the automatic stay. That motion was granted by the bankruptcy court upon consent of counsel for Airail. A trustee's sale was then scheduled for May 17, 1993, and notice was again sent to the address specified in Andrews' guaranty of payment and to counsel for Airail. At the trustee's sale the only bidder was Nationsbank, which acquired the property for $500,000. The accounting firm of Arthur Andersen had appraised the property at $920,000.

*The Tarmac litigation.* On December 2, 1992, Airail (by then in Chapter 11) sued Tarmac for unpaid rent on its 15–year lease of the Prince William County property. The claim, including interest and late charges, was for $955,194.19. Tarmac counterclaimed for breach of contract. After Nationsbank acquired the property at the May 1993 foreclosure sale, it negotiated with Tarmac for the settlement of the lease litigation. By letter dated January 12, 1994, Andrews expressed his discontent with the prospect of having the Tarmac lawsuit disposed of for inadequate value: "The bank, instead of pursuing a suit against Tarmac for the nonperformance on their lease, chose instead to settle with them by offering to sell the property to Tarmac for one-third the debt owed." Nevertheless, by letter dated January 24, 1994, Airail's counsel was advised by Tarmac's counsel that Nationsbank would sell the property to Tarmac as part of the settlement of the litigation. On or about February 28, 1994, Airail's counsel executed a consent order substituting Nationsbank for Airail as the plaintiff in the lease litigation. On March 11, 1994, final settlement was reached

---

**1.** Nationsbank initially raised a standing issue as to Andrews, a Chapter 7 debtor, but abandoned that position at oral argument, presumably because of the joinder of the trustee of Andrews' bankruptcy estate. *Rae v. Tyler*, 1992 WL 391344, at *2, 1992 U.S.Dist. LEXIS 18846, at *4 (D.D.C.1992).

between Nationsbank and Tarmac, and Tarmac bought the property for $775,000.

## DISCUSSION

Andrews' first claim is that, contrary to Virginia law,[2] he was not given proper notice of the trustee's sale. Nationbank's response is that the language of the guaranty permitted it to dispose of collateral without any notice to Andrews at all:

> Guarantors expressly agree that the Lender may, in its sole discretion, without notice to or further assent of the Guarantors and without in any way releasing, affecting or impairing the obligations and liabilities of the Guarantors hereunder ... (d) effect any release, subordination, compromise or settlement in connection with the Note or any of the other Financing Documents; (e) agree to the substitution, exchange, release or other disposition of the Property or any part thereof, or any other collateral for the Loan or to the subordination of any lien or security interest therein.

Those contract terms are clear and unambiguous and must be given their plain and ordinary meaning. *Marina Shores, Ltd. v. Cohn–Phillips, Ltd.*, 246 Va. 222, 435 S.E.2d 136, 138 (1993). Under those terms, defendant could have sold the property without giving any notice to plaintiffs. There may be a dispute of fact as to whether Andrews had actual or constructive notice of the impending property sale, but under Virginia law that factual issue is immaterial.

Andrews next argues that the price paid for the property at the May 1993 foreclosure sale was so grossly inadequate as to raise the presumption of fraud, and at the very least entitle him to a trial on his claim that Nationsbank violated the duty of good faith and fair dealing. In Virginia, however, there is no independent cause of action for breach of the duty of good faith and fair dealing. *Mahoney v. Nationsbank of Virginia, N.A.*, 249 Va. 216, 455 S.E.2d 5, 8 (1995) (when parties to a contract create valid and binding rights, one party does not breach the [UCC's] obligation of good faith by exercising such right).

It is undisputed that the trustee's sale was conducted in accordance with the applicable laws of Virginia. The transaction that occurred at the trustee's sale was therefore commercially reasonable as a matter of law. *BFP v. Resolution Trust Corp.*, —— U.S. ——, ——, 114 S.Ct. 1757, 1765, 128 L.Ed.2d 556 (1994) (where Chapter 11 debtor sought to set aside properly conducted foreclosure sale because it resulted in a sale below "reasonably equivalent value," the reasonably equivalent value for foreclosed property is the price in fact received at the foreclosure sale).

Andrews' claims about the trustee's sale are in any event barred by the doctrine of *res judicata*. The Loudoun County Circuit Court ratified the trustee sale. John Andrews and the trustee both had rights to challenge the sale price under established Virginia procedures (*see* Va.Code Ann., § 26–33) but failed to do so. They may not now contest the reasonableness of the sale or raise other issues they could have raised in that proceeding. *Jacobs v. First Merchants National Bank*, 15 Va.Cir. 1 (1984); *Smith v. Ware*, 244 Va. 374, 421 S.E.2d 444, 445 (1992).

Andrews claims, finally, that Nationsbank had a statutory duty under Va. Code Ann. Section 8.9–504(3) to notify him as to the terms and conditions of the Tarmac settlement before consummating it. That claim fails. The Virginia Commercial Code imposed no duty upon Nationsbank to notify plaintiffs. The secured transactions article of the Code does not govern the assignment of claims with respect to land. Va.Code Ann. section 8.9–104(j).

---

**2.** The applicable substantive law in this case is that of Virginia. *Gray v. Grain Dealers Mutual*

*Insurance Co.*, 871 F.2d 1128, 1129–30 (D.C.Cir. 1989).