Omni Alarm Systems, Inc.

v.

MCI Electric Co., Inc.

February 26, 2002

Case No. (Law) 01-36

BY JUDGE JOHN E. WETSEL, JR.

This case came before the Court for trial on February 20, 2002, the parties appeared with their counsel, and evidence was heard and argued. Upon consideration, the Court has decided to find for the Defendant, because the Plaintiff's negotiation of the check tendered by the Defendant, which was conspicuously marked for payment "in full" of their disputed contract claim, operated as an accord and satisfaction pursuant to Virginia Code § 8.3A-311.

## I. *Findings of Fact*

The following facts are found by the greater weight of the evidence.

The Plaintiff, Omni Alarm Systems, is in the business of installing and maintaining security and other related electronic systems.

The Defendant, MCI Electric Company ("MCI"), is an electrical contractor, and on April 23, 1999, MCI entered into a contract with Construction Control Corporation ("CCC") for work on the addition to the Warren County Courthouse.

The contract between MCI and CCC stated that the work was to begin on or before April 21, 1999, and was to be substantially completed by January 21, 2000, with final completion on or before February 21, 2000. Article 8 of the MCI-CCC contract provided that:

All Contractors specifically recognize that a delay in achieving either the Substantial Completion Date or the Final Completion Date will necessarily cause damages, losses, and expenses to the Owner. . . . All parties recognize and acknowledge that said damages, losses, and expenses might not be readily identifiable or ascertainable at the time they occur or at any future time. Therefore, and in recognition of these factors and the likelihood that actual damages from such a delay will not be readily ascertainable, the delaying contractor(s) shall pay to the Owner, as liquidated damages and not as a penalty, the sum of $500.00 per calendar day for each day by which failure to meet the Final Completion Date shown in the Construction Schedule, adjusted in accordance with Article 8.2, delays the Final Completion of the project.

On August 24, 1999, MCI entered into a Purchase Order with OMNI for the installation of the cameras and security devices for the contract price of $40,561.75. Unfortunately, the Purchase Order omitted many material provisions which would be commonly found in a subcontract on a municipal project. There was no start date, no completion date, and no specification of the specific equipment to be installed; instead, the Purchase Order simply provided that OMNI's work would be "per plans and specifications." The Purchase Order made no reference to any liquidated damage provision.

The only documents which MCI gave to OMNI at the time the Purchase Order was entered into were the plans, on which the security devices were simply located by symbols. The plans contained no specifications. The project specifications were a part of a large bound "Project Manual," which contained all the significant contract documents, and both CCC and MCI had copies of the Project Manual, but OMNI did not.

The Project Manual contained all the significant contract documents including those containing the liquidated damage provision, and both MCI and CCC referred to the Project Manual as the "Specifications." *See, e.g.* Defendant's Ex. 1, July 11, 2000, letter. In its notation in the OMNI Purchase Order, "per plans and specifications," MCI was referring to the "Project Manual," so it used the wrong nomenclature in its Purchase Order, and OMNI was not given a copy of the Project Manual. Insofar as the actual work to be performed, there was no reason to give OMNI a copy of the Project Manual, because the *project specifications had no provisions governing the work that OMNI was to perform.*

OMNI's security work had to be done after MCI had installed the wiring conduits, and OMNI did not start its work until February 11, 2000, which was

after the date for substantial completion set forth in the Project Manual had passed. OMNI claimed that had it been provided proper access to the work by MCI, OMNI could have completed its work under the Purchase Order in six weeks.

The first written notice received by OMNI Alarm Systems concerning liquidated damages was a July 12, 2000, letter from MCI, which enclosed the July 11, 2000, letter from CCC, stating that, as of July 17, 2000, liquidated damages would be assessed against MCI. Defendant's Exhibit 1.

After July 17, 2000, OMNI and MCI became involved in a dispute over the completion of the work. *See, e.g.* Defendant's Exs. 2 and 4, and Plaintiff's Ex. 4 and 5. Warren County, through its agent CCC, withheld $23,000.00 as liquidated damages from MCI's contract retainage.

On September 22, 2000, OMNI invoiced MCI for $40,561.75 pursuant to the Purchase Order dated August 24, 1999.

On October 27, 2000, MCI sent OMNI a check for $17,561.75, which was the difference between the OMNI Purchase Order amount of $40,561.75, and the $23,000 in liquidated damages which had been assessed against MCI by CCC. MCI's check contained the notation "In full" on the face of the check, an agent for OMNI marked through the "In full" notation and wrote beside it "Amount in dispute," and OMNI negotiated the check.

On February 16, 2001, OMNI filed this action to collect the balance of its Purchase Order.

## II. *Conclusions of Law*

A contract will be construed against the party who prepared it. *Mahoney v. NationsBank*, 249 Va. 216, 222, 455 S.E.2d 5 (1995). "[T]he words used by the parties [in their contract] must be given their plain and ordinary meanings." *Hutter v. Heilmann*, 252 Va. 227, 231, 475 S.E.2d 267, 270 (1996). "The court will not write a new contract for the parties even when, in light of the facts known to them, the court might think they should have adopted different language." *Lerner v. Gudelsky Co.*, 230 Va. 124, 132, 334 S.E.2d 579 (1985). The parties' contract becomes the law of the case unless it is repugnant to some rule of law or public policy. *Mercer v. South Atlantic Ins. Co.*, 111 Va. 699, 704, 69 S.E. 961, 962 (1911).

In this case, MCI made a mistake in fact when it prepared the Purchase Order, and it did not refer to the "Project Manual;" therefore, the liquidated damage provision in the contract between MCI and CCC was not part of the contract between MCI and OMNI.

Among other defenses, MCI defends this action on the grounds that OMNI's negotiation of its check, which it tendered marked "In Full," operated as an accord and satisfaction pursuant to Virginia Code § 8.3A-311, which provides in pertinent part that:

(a) If a person against whom a claim is asserted proves that (i) that person in good faith tendered an instrument to the claimant as full satisfaction of the claim, (ii) the amount of the claim was unliquidated or subject to a bona fide dispute, and (iii) the claimant obtained payment of the instrument, the following subsections apply.

(b) . . . the claim is discharged if the person against whom the claim is asserted proves that the instrument or an accompanying written communication contained a conspicuous statement to the effect that the instrument was tendered as full satisfaction of the claim. . . .

(d) A claim is discharged if the person against whom the claim is asserted proves that within a reasonable time before collection of the instrument was initiated, the claimant, or an agent of the claimant having direct responsibility with respect to the disputed obligation, knew that the instrument was tendered in full satisfaction of the claim.

The official comments to this section are instructive:

2. Comment d. to Restatement of Contracts, Section 281, discusses the full satisfaction check and the applicable common law rule. In a case like Case # 1, the buyer can propose a settlement of the disputed bill by a clear notation on the check indicating that the check is tendered as full satisfaction of the bill. Under the common law rule the seller, by obtaining payment of the check accepts the offer of compromise by the buyer. *The result is the same if the seller adds a notation to the check indicating that the check is accepted under protest or in only partial satisfaction of the claim.* Under the common law rule the seller can refuse the check or can accept it subject to the condition stated by the buyer, but *the seller cannot accept the check and refuse to be bound by the condition.* The rule applies only to an unliquidated claim or a claim disputed in good faith by the buyer. The dispute in the courts was whether Section 1-207 changed the common law rule. The Restatement states that section "need not be read as changing this well-established rule."

3. As part of the revision of Article 3, Section 1-207 has been amended to add subsection (2) stating that Section 1-207 "does not apply to an accord and satisfaction." Because of that amendment and revised Article 3, Section 3-311 governs full satisfaction checks. Section 3-311 follows the common law rule with some minor variations to reflect modern business conditions. In cases covered by Section 3-311 there will often be an individual on one side of the dispute and a business organization on the other. This section is not designed to favor either the individual or the business organization. . . . Section 3-311 is based on a belief that the common law rule produces a fair result and that informal dispute resolution by full satisfaction checks should be encouraged.

(Emphasis added.)

Offering a check for less than the full amount due presents the claimant with a dilemma: Do I accept the lesser amount and forfeit what is owed me, or do I refuse it all in the hope that I get the full amount later? In 1992, § 8.2-207 was amended to add the phrase "This section does not apply to an accord and satisfaction." Before this amendment, some courts and commentators held the opinion that the payee's endorsement of the check with a notation like "Rights reserved" or "Amount in Dispute," as was done in this case, was a 1-207 reservation of rights which survived the negotiation of the tendered check, but the 1992 amendment has now closed the door on this argument. However, even before the 1992 amendment to section 1-207, in *John Grier Constr. v. Jones Welding & Repair*, 238 Va. 270, 273 (1989), the Virginia Supreme Court held that "U.C.C. § 1-207 does not operate to supplant the common law doctrine of accord and satisfaction." In *Grier* the full payment check which was negotiated by the subcontractor did not result in an accord and satisfaction, because the claimant was unaware of the full payment notation on the back of the check. In the pending case, OMNI was aware of the "in full" notation, because it marked it out and wrote "amount in dispute," which was apparently an attempt to reserve its contractual rights under section 1-207 or some common law counterpart.

The facts in *Coady v. Strategic Resources, Inc. v. Strategic Resources, Inc.*, 258 Va. 12, 515 S.E.2d 273 (1999), are squarely on point with those of the case at bar. Coady has a consulting agreement with Strategic, and Coady submitted a monthly invoice for his work for $7,700.71. Strategic refused to pay the amount billed and sent Coady a check for $3,350.94, which was for less than half the amount claimed, along with a letter in which Strategic stated: "This check covers all approved hours and expenses for all projects per our

discussions. This will now settle your account with SRI." Coady wrote on the front of the check "Accepted as Partial Payment Balance due $3450.00." Coady endorsed the back of the check, and below his signature he wrote "Accepted as partial payment of account." Both the district court and the circuit court dismissed Coady's claim and Strategic's counterclaim for $30,000 "on the basis that an accord and satisfaction had been reached by the parties pursuant to Section 8.3A-311 of the Code of Virginia." *Id.* at 15. The dismissal of the respective claims was not reversed by the Supreme Court.

OMNI argues that the amount in dispute was a liquidated amount and that MCI's position was not taken in good faith. A liquidated claim is a claim "made certain by the agreement of the parties or by operation of law." *Black's Law Dictionary* (5th ed. 1979). An action on a note or on a claim for indemnity are illustration of claims for a liquidated amount. However, once a good faith dispute arises about the amount due, then the provisions of Virginia Code § 8.3A-311 apply. Moreover, once the dispute arose about whether OMNI had completed the work and whether MCI had suffered damages by reason of OMNI's delay, the amount due under the contract was no longer a liquidated claim.

OMNI argued strenuously that MCI's position that the liquidated damage provision was part of the contract was not maintained in good faith. Comment 4 to § 8.3A-311 states that:

> "Good faith" in subsection (a)(i) is defined in Section 3-103(a)(4) as not only honesty in fact, but the observance of reasonable commercial standards of fair dealing. The meaning of "fair dealing" will depend upon the facts in the particular case.

In this case, there was a mutual mistake in fact about what was incorporated into the contract between the parties by the notation on the Purchase Order that the work was to be done "per plans and specifications." It is a common practice in the construction industry to have a set of interrelated contract documents and for there to be a flow down provision whereby the general or special conditions of the contract between the owner and the general contractor will apply to the subsequent contracts entered into between the general contract and its subcontractors and also to the contracts which the subcontractors enter into with their subcontractors. *See, e.g. C. & P. Tel. v. Sisson and Ryan, Inc.*, 234 Va. 492, 494-95, 362 S.E.2d 723 (1998) ("The site work contract consisted of several writings that were incorporated by reference; they included the September 14 agreement between C & P and S & R, the general conditions of the contract for construction, the supplementary

general conditions, the EEOC requirements, the specifications, and the drawings.")

MCI's position was taken in good faith, and it did not violate reasonable commercial standards. It could well be argued that OMNI should have been aware of the provisions contained in the Project Manual, because had they physically reviewed the specifications, they would have had to examine the Project Manual, which contained both the specifications and the liquidated damage provision. This case is distinguished from *Advanced Technology Assocs., Inc. v. Herley Industries, Inc.*, LEXIS 13256 (E.D. Pa. 1998), relied upon by OMNI, because there was a bona fide dispute in this case, which preceded the tender of the "in full" check.

## III. *Decision*

For the foregoing reasons, it is adjudged and ordered that judgment shall enter for the Defendant, MCI Electric Company, Inc., who shall recover its costs incurred in this action.