Present: Kinser, C.J., Lemons, Goodwyn, Millette, and Mims, JJ., and Carrico and Koontz, S.JJ.

CAPPO MANAGEMENT V, INC., T/A VICTORY NISSAN OF CHESAPEAKE

v. Record No. 100797    OPINION BY JUSTICE DONALD W. LEMONS
                                June 9, 2011
BRENDA BRITT

FROM THE CIRCUIT COURT OF THE CITY OF NEWPORT NEWS
David F. Pugh, Judge

In this appeal, we consider whether the Circuit Court of the City of Newport News (the "trial court") erred when it ruled that Cappo Management V, Inc., trading as Victory Nissan of Chesapeake ("Victory Nissan"), violated Article Nine of the Uniform Commercial Code as adopted by Virginia in Title 8.9A ("Article Nine") by not providing a notice of disposition to Brenda Britt ("Britt") after Victory Nissan repossessed and disposed of a car it previously had sold to Britt.

I.  Facts and Proceedings Below

In November 2004, Britt went to Victory Nissan in Chesapeake, Virginia, to inquire about purchasing a car. Finding a car she desired to purchase, Britt completed and signed a "Credit Application," a "Buyer's Order," a "Retail Installment Sales Contract" ("RISC"), a "Supplement to Purchase Contract," and an "Agreement to Furnish Insurance Policy." The "Buyer's Order" stated that the "buyer's order, along with other documents signed by [Britt] in connection with this order, comprise the entire agreement between the parties

affecting this purchase." As a down payment on the purchase of the new car, Britt traded in her old vehicle and wrote Victory Nissan a check for $1,500.

Victory Nissan subsequently attempted to obtain financing for the sale of the car to Britt through Capital One, but Capital One "withdrew financing." Thereafter, Victory Nissan sought to void its contract with Britt and, in January 2005, Victory Nissan repossessed the car from Britt's home in North Carolina. Victory Nissan later disposed of the vehicle without providing prior notice to Britt.

Britt subsequently filed a warrant in debt against Victory Nissan in the General District Court for the City of Newport News. Britt alleged that Victory Nissan violated Article Nine, and sought liquidated statutory damages pursuant to Code § 8.9A-625(c)(2). At trial, the General District Court entered judgment in Britt's favor at the court's jurisdictional limit of $15,000. Victory Nissan appealed, and the suit was heard de novo by the trial court.

Upon the parties' stipulations of fact and exhibits, the trial court found that Victory Nissan sold the car to Britt by a conditional sale. The trial court held that Victory Nissan's subsequent repossession of the car was governed by Article Nine. The trial court also found that Victory Nissan failed to provide Britt the notice of disposition required by Article

2

Nine; accordingly, the trial court entered judgment against Victory Nissan for $15,000, plus interest.

Victory Nissan timely filed its notice of appeal and we granted an appeal on the following assignment of error:

1. The trial court erred in ruling that [Victory Nissan] violated Va. Code §§ 8.9A-611 through [-]614 by not providing a notice of disposition to [Britt].

## II. Analysis

### A. Standard of Review

"The interpretation of a contract presents a question of law subject to de novo review." PMA Capital Ins. Co. v. US Airways, Inc., 271 Va. 352, 357-58, 626 S.E.2d 369, 372 (2006).

### B. Victory Nissan Violated Article Nine

On appeal, Victory Nissan contends that the trial court erred in ruling that Victory Nissan violated Article Nine because those sections of the Virginia Code apply only after a default, which never occurred in this case. Specifically, Victory Nissan argues that it was not a secured creditor under Article Nine because the contract documents were conditioned upon final approval by a lender – a condition which never occurred, thereby making Victory Nissan's agreement with Britt void. Britt contends that the trial court properly held that Victory Nissan was a secured creditor in this case and Victory Nissan failed to comply with its Article Nine obligations after

3

it cancelled the sale.  We agree with the trial court and Britt.

We have stated that, "when considering the meaning of any part of a contract, we will construe the contract as a whole." Lansdowne Dev. Co. v. Xerox Realty Corp., 257 Va. 392, 401, 514 S.E.2d 157, 161 (1999).  We have also held that "[i]n the event of an ambiguity in the written contract, such ambiguity must be construed against the drafter of the agreement."  Martin & Martin, Inc. v. Bradley Enters., Inc., 256 Va. 288, 291, 504 S.E.2d 849, 851 (1998).  Viewing the agreement between Victory Nissan and Britt as a whole, there is a conflict between the "Bailment Agreement" provision in the "Supplement to Purchase Contract," which declares that the car was to "remain the property of [Victory Nissan]" pending "approval of a lender," and the other contract documents, all of which treat the vehicle as Britt's property as of November 28, 2004, the date of the sale.

Specifically, the "Agreement to Furnish Insurance Policy" required Britt "to furnish [her] own Insurance Policy" covering the vehicle, and further stated that Britt "assume[s] forthwith any and all responsibility for . . . the vehicle."  The "RISC" states that Victory Nissan "will figure [Britt's] Finance Charge on a daily basis at the Annual Percentage Rate," effective as of the date of the sale, November 28, 2004.

4

Lastly, Victory Nissan conceded, and the "RISC" and the "Buyer's Order" evidence, that Britt took possession of the vehicle on November 28, 2004, after trading in her previous vehicle and after making a down payment on the new car.  All three of these documents treat the vehicle as Britt's property and are effective as of the date they were entered into, November 28, 2004.  In this case, Victory Nissan was the drafter of the agreement.  Accordingly, the ambiguity must be construed against Victory Nissan.

Applying this principle, we hold that the agreement between Victory Nissan and Britt constituted a conditional sales contract, and that the vehicle became Britt's property on November 28, 2004, pursuant to the terms of the agreement.  We also agree with Britt that the language in the "Supplement to Purchase Contract," that Britt "understand[s] that the completion of this sales transaction is contingent upon approval of a lender," is a condition subsequent which, when not fulfilled, provided Victory Nissan the right to cancel the sale and the contract.  This is not the end of the inquiry, however.

Article Nine of the UCC governs secured transactions and applies to "a[ny] transaction, regardless of its form, that creates a security interest in personal property . . . by contract . . . ."  Code §§ 8.9A-101 and 8.9A-109 (emphasis

5

added).  Under Article Nine, a secured party includes "a person in whose favor a security interest is created or provided for under a security agreement" as well as "a trustee, indenture trustee, agent, collateral agent, or other representative in whose favor a security interest . . . is created or provided for."  Code § 8.9A-102(a)(72)(A) & (E).  In this case, Victory Nissan acquired a security interest in the car by virtue of the terms of the "Buyer's Order" and the "RISC."  The "Buyer's Order" declares that "[Britt] hereby grants [Victory Nissan] a security interest in the motor vehicle . . . to be purchased pursuant to this agreement, and such security interest shall remain in effect until all sums due hereunder have been paid in full."  Similarly, the "RISC" lists Victory Nissan as the "Creditor-Seller" and states that, "[Britt is] giving [Victory Nissan] a security interest in the vehicle being purchased."

In order for Britt to avail herself of the protections of Article Nine and recover statutory damages, she must have been a debtor.  Code § 8.9A-625(c).  A "debtor" is "a person having an interest, other than a security interest or other lien, in the collateral, whether or not the person is an obligor."  Code § 8.9A-102(a)(28)(A).  In this case, Britt made a down payment on the car, traded in her old vehicle, and assumed an obligation to pay monthly installments.  As a result, Britt obtained an interest in the collateral (the car) as a debtor.

See Barnette v. Brook Road, Inc., 457 F. Supp. 2d 647, 658 (E.D. Va. 2006) (citing Rhoten v. United Va. Bank, 221 Va. 222, 225-29, 269 S.E.2d 781, 783-85 (1980)) (holding that because the plaintiff made a down payment on the car and assumed an obligation to pay monthly installments "she obtained an interest in the collateral as a debtor"). Notably, the provisions of Article Nine apply "whether title to collateral is in the secured party or the debtor." Code § 8.9A-202.

Having held Britt to be a debtor under Article Nine, our focus shifts to the validity of Victory Nissan's repossession of the car. "After default, a secured party . . . may take possession of the collateral . . . ." Code § 8.9A-609(a)(1). Victory Nissan concedes that no default occurred in this case. "Typically, a secured creditor may not take possession of the collateral until the debtor defaults." Barnette, 457 F. Supp. 2d at 658 (citation omitted). However, the parties may vary the provisions of the Uniform Commercial Code, as adopted into Virginia law, by agreement, as long as they act in good faith. Code § 8.1A-302; Becker v. National Bank & Trust Co., 222 Va. 716, 719, 284 S.E.2d 793, 794 (1981). See Barnette, 457 F. Supp. 2d at 658. Accordingly, the parties were free to agree that Victory Nissan, as the secured creditor, may repossess the vehicle after the occurrence of something other than default. This is exactly what the parties in this case did.

The "Buyer's Order" stated:

> If [Victory Nissan] does not receive approval
> from a financial source for [the] proposed
> [RISC, it] may cancel the sale and the contract,
> and [Britt] will return the vehicle . . . .   If
> [Britt fails] to return the vehicle [Victory
> Nissan] shall be entitled to repossess the
> vehicle and shall have all other rights under
> . . . the Code of Virginia . . . and common law.

Accordingly, when financing fell through, Victory Nissan gained the right to repossess the vehicle.  Because Victory Nissan was a secured party and Britt was a debtor under Article Nine, however, Victory Nissan also "incurred certain obligations when it repossessed the car."  Barnette, 457 F. Supp. 2d at 659.

After repossessing the collateral, a secured party may dispose of it in a commercially reasonable manner, Code § 8.9A-610(a), but it must provide notice to the debtor 10 days before doing so.  Code §§ 8.9A-611 through -614.  Significantly, "[i]t is the secured party's repossession of the collateral, not necessarily the default, that triggers the notice requirement. Absent valid waiver by the debtor in a written agreement made after default, the parties could not alter the notice provisions."  Barnette, 457 F. Supp. 2d at 659 (citing, inter alia, Code §§ 8.9A-602(7) and 8.9A-624(a)).  The parties did not waive the notice requirement in this case.  Additionally, Britt, as a debtor, retained an interest in the car after Victory Nissan repossessed it, at least to the extent that she

8

had a right of redemption under the "RISC" and Virginia law. See Code § 8.9A-623(c)(2). Therefore, Victory Nissan was required to provide notice to Britt prior to disposition of the car. Victory Nissan concedes that it did not do so.

### III. Conclusion

We hold that the trial court did not err in its judgment that Victory Nissan's repossession of the car in this case was governed by Article Nine and that Victory Nissan failed to provide Britt the required notice of disposition required by Article Nine. Accordingly, the judgment of the trial court is affirmed.

Affirmed.

9