Present:  All the Justices

THE DOCTORS COMPANY
                                      OPINION BY
v.  Record No. 120702        JUSTICE LEROY F. MILLETTE, JR.
                                   April 18, 2013
WOMEN'S HEALTHCARE ASSOCIATES,
INC., ET AL.

            FROM THE CIRCUIT COURT OF LOUDOUN COUNTY
                       Burke McCahill, Judge

     This appeal arises from a declaratory judgment action in

which The Doctors Company (TDC), a professional liability

insurance company, sought a determination that its coverage of

policyholder Women's Healthcare Associates (WHA) did not apply

to a pending breach of contract action brought by the Davidson

family against WHA.  The pending breach of contract action

relates to WHA's participation in the Virginia Birth-Related

Neurological Injury Compensation Act, Code § 38.2-5000 et seq.

(the "Birth Injury Fund").  For the reasons stated herein, we

affirm the holding of the circuit court finding that the policy

covers the claim alleged by the Davidsons in their complaint

against WHA.

                    I.  Facts and Proceedings

     The Birth Injury Fund is a statutory structure creating a

no-fault source of compensation for families whose children

suffer birth-related neurological injuries when delivered by a

participating physician or hospital.  Code § 38.2-5000 et seq.

Physicians or hospitals voluntarily pay into the fund, which

operates in lieu of civil suits for medical malpractice. Code § 38.2-5002. Physicians and hospitals are required to give written notification to their obstetrical patients of their participation or non-participation in the fund. Code § 38.2-5004.1.

The case at bar stems from an underlying breach of contract action by the Davidson family against WHA, which is not currently before this Court but integral to these proceedings. The Davidsons allege that, on December 27, 2006, they entered into an express contract in which WHA agreed

> to provide obstetrical care and pre-natal management of her pregnancy. . .; to provide her with management of her ultimate labor and delivery of that child; to participate in the Virginia Birth-Related Neurological Injury Compensation Program ("Birth Injury Fund"); and to inform her if they ceased participating in the Birth Injury Fund. Such services and contractual obligations of WHA, through its employee-agents, continued through at least May 17, 2007, and the birth[.] In exchange for such services and contractual obligations, Michele Davidson agreed to consent to treatment, tender payment on behalf of herself and [the baby], and waive future malpractice claims which might arise from a birth-related neurological injury to [the baby].

The Davidsons then allege that, after they entered into this contract in part in reliance on WHA's participation in the Birth Injury Fund, WHA materially breached the contract by failing to pay into the fund as represented to the Davidsons; that their child suffered an otherwise compensable injury under the fund when delivered; and that, due to the breach, the Davidsons were

2

not able to receive compensation under the fund.  The Davidsons' complaint includes a copy of WHA's written notification of its participation in the fund, acknowledged as received by Michele Davidson, as evidence that such representation was part of the contract.  Although WHA had participated in the fund in the past, it is undisputed that WHA was not paying into the Birth Injury Fund at either the time of the notification or at the time of the birth of the Davidsons' son, a child alleged to have been born with quadriplegic cerebral palsy and static encephalopathy.  It is likewise undisputed that WHA never notified the Davidsons of its non-participation during this time period.  As a result of WHA's non-participation, the Davidsons could not file a claim with the Commonwealth under the Birth Injury Fund, and instead filed a complaint against WHA setting forth several related counts of breach of contract and breach of fiduciary duty.  After initial motions before the circuit court, only two breach of contract counts, one on behalf of Michele Davidson and one on behalf of her husband, Nathan Davidson, remain at issue between the Davidsons and WHA.

The action before this Court is a separate declaratory judgment action in which WHA's professional liability insurance company, TDC, seeks to establish that the pending breach of contract action is not covered under the TDC insurance policy held by WHA.  TDC's policy with WHA generally states that it

3

provides coverage for "those sums that the [insured] becomes legally obligated to pay as damages for Claims covered by this Policy resulting from . . . Professional Services rendered." (Emphasis in original.)  In the policy's "Definitions" section, a "Claim" is defined as "a demand for payment of damages or for services arising from a Professional Services Incident . . . not otherwise excluded by the terms and conditions of this Policy." (Emphasis in original.)  One such exclusion is "[l]iability arising out of any . . . violation of any statute."  TDC argued below that the alleged liability does not stem from professional services and is therefore not covered under the policy.  In the alternative, TDC also argued that the liability arising from the inaccurate notification was in violation of a state statute requiring notification of participation in the Birth Injury Fund and therefore excluded from coverage under the language of the policy.

The circuit court found in favor of WHA and the Davidsons, and TDC now appeals to this Court.  Only the Davidsons filed a brief in opposition.

## II.  Discussion

### A.  Standard of Review

The material facts before the Court are undisputed.  The issues before the Court concern the interpretation and application of terms of the insurance contract to those

4

undisputed facts. We therefore review these questions of law de novo. <u>Virginia Farm Bureau Mut. Ins. Co. v. Williams</u>, 278 Va. 75, 80, 677 S.E.2d 299, 302 (2009).

B.    Whether the Breach of Contract Claims are Covered as "Professional Services"

The initial question is whether the claim falls under the scope of "Section II: What Liability Is Covered," subsection b: "Coverage B – Entity Professional Liability." The section states that TDC "will pay on behalf of the [insured] those sums that it becomes legally obligated to pay as damages for <u>Claims</u> covered by this Policy resulting from . . . <u>Professional Services</u> rendered by a Protected Party for whose acts or omissions the [insured] is legally responsible." (Emphasis in original.)

In addition, Section VII of the policy provides the following definitions to define the scope of these terms:

a. <u>Claim</u> means a demand for payment of damages or for services arising from a <u>Professional Services Incident</u> . . . that is not otherwise excluded by the terms and conditions of this Policy.

. . . .

l. <u>Professional Services</u> means the diagnosis, treatment, care, or consultation, regarding a patient's medical condition.

. . . .

m. <u>Professional Services Incident</u> means the performance of or failure to perform <u>Professional Services</u> . . . by:

5

> 1. a <u>Healthcare Professional</u>, when acting within the scope of his or her specialty and training[.]

(Emphasis in original.)

TDC takes the position that the alleged breach, injury, and damages resulted from a misrepresentation in a contract, which is not within the scope of a provider's specialty and training, and therefore lacked a causal nexus with professional services rendered.  TDC acknowledges that there were professional services employed in the birth of the child.  TDC argues, however, that the breach was the misrepresentation and the injury and damages sustained were incurred due to a lack of compensation under the fund based on the contractual misrepresentation, not "resulting from" the professional service itself as would be alleged in a tort action.

The Davidsons argue that the lack of compensation cannot be severed from the professional services because one of the elements required for compensation under the fund, in addition to a qualifying birth injury, is that the child must have been delivered by a participating professional service provider or in a participating hospital.  The Davidsons therefore contend that the injury would not have been possible without the rendering of professional services, and so the claim is one "arising from" professional services.

The parties point to separate portions of the Policy to support their respective arguments. TDC argues that a plain-language reading of the term "resulting from" professional services, as stated in Section II(b) describing the coverage under the policy, requires a direct nexus, and that a contractual misrepresentation that is out of the scope of the doctor's professional training lacks this nexus. The Davidsons respond that the operative language defining a covered claim is clarified by the "Definitions" of Section VII to include any claim "arising from" professional services and not otherwise excluded by the policy.

The Court is left to resolve this apparent conflict. TDC has conceded that the use of different language in the drafting of the contract was not accidental and that "arising from" has a broader definition than "resulting from." We have said that "when considering the meaning of any part of a contract, we will construe the contract as a whole." Cappo Mgmt. V, Inc. v. Britt, 282 Va. 33, 37, 711 S.E.2d 209, 211 (2011) (quoting Lansdowne Dev. Co. v. Xerox Realty Corp., 257 Va. 392, 401, 514, S.E.2d 157, 161 (1999)); see Vega v. Chattan Assocs., Inc., 246 Va. 196, 199, 435 S.E.2d 142, 143 (1993). As a result, despite TDC's urging that we should apply a plain-language reading of the term "resulting from," we are obligated to consider both

7

phrases and resolve the ambiguity that arises from their presence in the same contract.

We have consistently held that "[i]n the event of an ambiguity in the written contract, such ambiguity must be construed against the drafter of the agreement." Cappo Mgmt., 282 Va. at 37, 711 S.E.2d at 211 (quoting Martin & Martin, Inc. v. Bradley Enters., Inc., 256 Va. 288, 291, 504 S.E.2d 849, 851 (1998)) (alteration in original); see Mahoney v. NationsBank of Va., 249 Va. 216, 222, 455 S.E.2d 5, 9 (1995); Winn v. Aleda Constr. Co., 227 Va. 304, 307, 315 S.E.2d 193, 195 (1984). This document, therefore, must be construed against TDC, using the broader construction attributable to "arising from."

Employing this broader construction thus permits a less direct nexus between the professional services rendered and the damages incurred, although such nexus must still be present. We conclude that, using the common understanding of the language, the term "arising from" is sufficient to include the professional services rendered in the birth of the Davidsons' child, as the rendering of such services would have been required to receive a payment from the Birth Injury Fund and therefore to recover damages in the underlying suit.

While not looking at this precise issue, the Fourth Circuit has had occasion to consider the definition of "professional services" in a professional liability insurance contract

8

construed under Virginia law, and its conclusion reinforces today's decision.  See St. Paul Fire & Marine Ins. Co. v. Jacobson, 48 F.3d 778, 782 (4th Cir. 1995).  The Court stated that, "in determining whether an insured physician has engaged in a professional service, courts must look at the nature of the insured's act or the service provided which gave rise to the damages complained of."  Id.  There, as in this case, the provider's actions included both acts that would be construed as professional services and others that would not, and the parties disagreed on "which . . . acts one must look to in determining whether the suit arose from professional services."  Id.  The Fourth Circuit held that, because "[t]he act complained of in the instant civil action[] necessarily included [a] medical act," the act was a professional service under the terms of the policy.  Id.

In the case at bar, the alleged breach — non-participation in the Birth Injury Fund at the time of delivery — and resulting damages could not have occurred without the professional medical services provided, i.e., the delivery of the child by WHA.  The delivery of the child by WHA was as necessary an element in the chain of causation as WHA's failure to participate in the fund as represented; in the absence of either, the Davidsons could not be owed compensation under the fund and there could be no

damages.  We thus affirm the ruling of the circuit court as to this issue.

C.    Whether the liability "ar[ose] out of any . . . violation of any statute."

Section VI of the policy, styled "Exclusions," states that TDC "will not pay any damages arising from, or defend against, any of the following: . . . f. Liability arising out of any: . . . 3. violation of any statute, code, ordinance, or regulation."  (Emphasis added.)

Arguing that WHA's misrepresentation of its participation was in violation of Code § 38.2-5004.1, which requires disclosure of participation status to patients, TDC disclaims any obligation to pay.  TDC argues that the Court should apply the plain meaning of the phrase "arising out of," and that, because the liability arises out of actions that also violate Code § 38.2-5004.1, the claim should be excluded from coverage under the policy.

The Davidsons agree that a plain-language reading is appropriate, but argue that such a reading requires the Court to consider from where the liability itself arises.  In this case, they argue, the liability is not based on a violation of the statute, although one may have occurred, but rather on the breach of WHA's contractual obligation to participate in the Birth Injury Fund as claimed in the amended complaint.

10

Thus, the Court is once again asked to construe the term "arising" in the context of this insurance policy. Unlike the first question, however, which required the Court to choose between the narrower term ("resulting from") and the broader term ("arising from"), the parties here both correctly acknowledge that, under Virginia law, a plain meaning application is appropriate. See Bentley Funding Group, L.L.C. v. SK&R Group, L.L.C., 269 Va. 315, 329, 609 S.E.2d 49, 56 (2005) ("When contract terms are clear and unambiguous, we must construe those terms according to their plain meaning." (quoting Lansdowne, 257 Va. at 400, 514 S.E.2d at 161)); accord, Bridgestone/Firestone, Inc. v. Prince William Square Assocs., 250 Va. 402, 407, 463 S.E.2d 661, 664 (1995).

Here, we conclude that a plain reading of the contract requires that the Court direct its attention to the elements necessary for liability, as pled in the action brought by the Davidsons against WHA. Consistent with our interpretation of the similar term "arising from" in Part II.B., while there need not be a direct causal nexus between the statutory violation and the liability, there must be a sufficient nexus between them to consider the liability to be "arising out of" the statutory violation in order for the claim to be exempt.

We therefore consider the allegations within the well-established framework of breach of contract claims: a legally

11

enforceable obligation between the defendant and plaintiff, breached by defendant, which proximately caused damages to the plaintiff. Filak v. George, 267 Va. 612, 619, 594 S.E.2d 610, 614 (2004). Here, liability would thus arise out of a finding that a contract existed between WHA and the Davidsons that included a legal obligation to participate in the Birth Injury Fund, that WHA materially breached the contract by failing to participate in the fund, and that this breach proximately caused the damages – the lack of compensation from the fund – when the Davidsons' child was delivered by this provider and suffered an injury otherwise compensable by the fund.

The alleged liability arises specifically out of WHA's failure to participate after a promise of participation — that is, failure to act in accordance with the terms of the express contract when performing its services — not its failure to accurately notify of participation, which is the act alleged to be in violation of the statute. Thus, WHA would be equally liable for breach of the contract if it were indeed a participant in the Birth Injury Fund at the time of the notification but not at the birth, thereby complying with the statute but denying the child coverage. Furthermore, WHA would be in no way liable if it had not been a participant at the time of the notification but began paying into the fund in Mrs.

12

Davidson's eighth month of pregnancy, therefore having violated the statute but resulting in no damages to the Davidsons.

The Davidsons will have to prove at trial that the promise of participation was a material aspect of WHA's performance of the contract and that it was breached. Nonetheless, the fact that the breach is in part evidenced by a written notification reflecting the misrepresentation of its participation status at the alleged initiation of the contract does not bear upon the liability. The statute has no private cause of action, and the misrepresentation in the notification is incidental to the breach of contract action. The performance of the alleged contract included WHA's promise of <u>participation</u> in the fund.

Thus, using even the broad and common meaning of the term, the alleged liability is "arising out of" the elements of the breach of the contract, not a violation of the statute. None of these elements – the lack of participation months after a representation of participation, the delivery of the baby, and alleged resulting lack of coverage – arise out of a violation of the statute. Interpreting "arising out of" to include any overlap with statutory law, even when that law affords no cause of action and is not necessary to the elements of the cause of action, would be outside the scope of the common usage of the term. We therefore affirm the ruling of the circuit court as to this issue.

13

III.  Conclusion

TDC concedes that in this instance its duty to defend and duty to indemnify are one and the same:  TDC has a duty to defend that which would be indemnified under the policy. Because the underlying action is covered by the insurance policy, it must both defend and indemnify WHA in the underlying breach of contract action.

For the aforementioned reasons, we affirm the holding of the circuit court.

Affirmed.

JUSTICE POWELL, with whom JUSTICE McCLANAHAN joins, dissenting.

In my opinion, the majority ignores the fact that the Davidsons specifically allege that the basis of their breach of contract claim is the misrepresentation, which, in turn, is a violation of Code § 38.2-5004.1.  Therefore, I must respectfully dissent.

According to the majority, "[t]he alleged liability arises specifically out of WHA's failure to participate after a promise of participation - that is, failure to act in accordance to the terms of the express contract when performing its services, not its failure to accurately notify of participation, which is the act alleged to be in violation of the statute."  In their

14

complaint, however, the Davidsons repeatedly reference the failure to notify as the material breach that serves as the basis for the present action.  Indeed, in Count I of their complaint, the Davidsons specifically state:

> As of at least January 1, 2007, Defendant WHA was not participating in the Birth Injury Fund.  Under the terms of the contract and the laws of Virginia, WHA was required to notify Plaintiff Michelle Davidson that it did not participate in the Birth Injury Fund. . . . At no time prior to Baby Grant's birth did WHA notify Plaintiff Michele Davidson that it did not participate in the Birth Injury Fund.  <u>WHA's failure to notify Plaintiff Michele Davidson constituted a material breach of its contract with Plaintiff Michele Davidson[.]</u> . . . Had Defendants fulfilled their obligations under the contract, Plaintiff Michele Davidson would have sought medical treatment from an obstetrician who did participate in the Birth Injury Fund.

(Emphasis added.)

Similarly, the Davidsons repeatedly state that, "[h]ad WHA <u>informed</u> Plaintiff Michele Davidson that they did not participate in the Birth Injury Fund, then Plaintiff Michele Davidson would not have entered into a contract for WHA's services."  (Emphasis added.)  The clear implication here is that it was the misrepresentation that formed the basis of their breach of contract claim.  Were it not for the misrepresentation, the Davidsons affirmatively state that they would have taken their business elsewhere.

15

Conspicuously, the only document produced by the Davidsons in support of their allegations directly rebuts the majority's claim. The "Notice to Obstetrical Patients" states that WHA "does . . . participate in the Virginia Birth-Related Neurological Injury Compensation Program." As the Notice is written in the present tense, the only inference that can be drawn is that WHA was misrepresenting its participation in the Birth Injury Fund, not that it was promising to participate in the Birth Injury Fund.

Thus, in my opinion, the entire basis of the majority's holding is belied by the plain language of the Davidsons' complaint. Therefore, I would hold that the liability alleged by the Davidsons arises out of WHA's failure to accurately notify – in violation of Code § 38.2-5004.1- and therefore the Exclusions provisions apply.

Furthermore, I agree with the majority that our focus must be on the elements necessary for liability in a breach of contract action. As this Court has repeatedly recognized:

> The elements of a breach of contract action are (1) a legally enforceable obligation of a defendant to a plaintiff; (2) the defendant's violation or breach of that obligation; and (3) injury or damage to the plaintiff caused by the breach of obligation.

Filak v. George, 267 Va. 612, 619, 594 S.E.2d 610, 614 (2004) (citations omitted).

16

However, application of these elements to the present case clearly demonstrates that liability arises from WHA's violation of Code § 38.2-5004.1. As evidenced by the "Notice to Obstetrical Patients," the legally enforceable obligation created by the alleged contract between the parties is only WHA's statutorily mandated obligation to inform the Davidsons of its participation or non-participation in the Birth Injury Fund. The breach of that obligation came when WHA violated Code § 38.2-5004.1 and misrepresented its participation in the Birth Injury Fund. Finally, the injury or damage to the Davidsons was their inability to collect from the Birth Injury Fund as a result. Notably, the Davidsons assert that WHA's express communication of its participation, which forms the basis for their breach of contract claim, was through the notification required by Code § 38.2-5004.1. Clearly, if WHA had not violated the statute, there would have been no misrepresentation, and thus, no breach of contract.

As I previously noted, in bringing this action, the Davidsons specifically relied upon WHA's violation of "the laws of Virginia." Indeed, even the majority recognizes that the elements include "the lack of participation months after a representation of participation" - in other words the lack of participation after a misrepresentation. Thus, the "promise" at the heart of the majority's claimed promise to participate is

17

the misrepresentation by WHA, which was in violation of the statute. Therefore, it is inconceivable that the violation of the statute is merely "incidental" to the breach of contract when it serves as the very basis for the underlying action.

Furthermore, the majority's narrow application of the phrase "arising out of" with regard to the Exclusions provisions is inconsistent with its broad application of the phrase "arising from" with regard to Professional Services. As the majority explained, a broad construction of the phrase "permits a less direct nexus between the professional services rendered and the damages incurred, although such nexus must still be present."[1] Employing the same broad application to the Exclusions provisions would require a holding that also permits a less direct nexus between the violation of the statute and the breach of contract, although such nexus must still be present. Thus, even though the majority has deemed the direct relationship between the breach of contract and the violation of the statute as merely "incidental," it is clear that such a relationship would be sufficient to exclude the claim from

---

[1] "In the insurance context 'arising out of' is broader than 'caused by,' and ordinarily means 'originating from,' 'having its origin in,' 'growing out of,' 'flowing from,' or 'incident to or having connection with.'" Trex Co. v. ExxonMobil Oil Corp., 234 F.Supp.2d 572, 576 (E.D. Va. 2002) (applying Virginia law) (quoting St. Paul Fire & Marine Ins. Co. v. Insurance Co. of North America, 501 F.Supp. 136, 138 (W.D. Va. 1980) (applying Virginia law)).

coverage under the broad application espoused by the majority with regard to Professional Services.[2]

It is further worth noting that, under the majority's logic, we look only to how the claim is styled and ignore the actual basis of that claim. Such an approach is destined to lead to unreasonable results, such as those in this case: a medical malpractice insurer having to defend a breach of contract claim that does not require the victim to prove that any malpractice actually occurred. Furthermore, the majority ignores the unintended consequences of its actions. As this is a breach of contract claim, it is not subject to limitations on recovery that apply to medical malpractice claims. See Code § 8.01-581.15. Thus, not only is The Doctors Company required to defend a claim that does not require the Davidsons to actually prove malpractice, it could be potentially liable for $4 million, more than twice the total amount it would be liable for in a medical malpractice claim under Code § 8.01-581.15.

For these reasons, I would reverse the decision of the trial court and grant the declaratory judgment sought by The Doctors Company.

---

[2] I recognize that the majority uses the term "claim" rather than liability. However, the term "claim," as defined in Section VII of the policy "means a demand for payment of damages . . . arising from a Professional Services Incident . . . that is not otherwise excluded by the terms and conditions of this Policy." Thus, the term "claim" in this context is clearly synonymous with liability.